[No. B024891. Second Dist., Div. Five. Apr. 19, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL THOMAS GREEN, Defendant and Appellant.

## COUNSEL

Jonathan Milberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Susanne C. Wylie and Jane Began Sagehorn, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, Acting P. J.**—By jury trial appellant Green was convicted on three counts, of violating Health and Safety Code sections 11366.6 (utilizing a building specifically designed to suppress law enforcement entry ["rock house"] in order to manufacture, sell or possess for sale cocaine) (count III); 11366 (maintaining a place for unlawfully selling, giving away or using cocaine) (count II); and 11350, subdivision (a) (possession of cocaine, a lesser included offense of possession for sale of cocaine [Health & Saf. Code, § 11351] as charged) (count I). He was sentenced to an upper term of five years in the state prison on count III (Health & Saf. Code, § 11366.6) and two concurrent terms on counts I and II.

At 5:30 a.m. on April 10, 1986, a sheriff's SWAT team (Special Weapons and Tactics) assisted other police departments in executing a search warrant for a fortified single family residence on 53rd Street in South Los Angeles. All windows and doors were barred, backed with heavy metal mesh. The deputies entered by using a heavy duty mountain rescue truck and four grappling hooks to remove the metal grated steel front door. Appellant was in the living room with a shotgun nearby. Another man and several women were also detained.

Police found an attache case filled with narcotic paraphernalia—a container of baking soda normally used as a cutting agent, gram scales, numerous vials and spoons, scissors and tweezers. Other vials, all containing the residue of a white powdery substance, were found throughout the house, and inhaling water pipes were found on the table. Based on all the items found in the house and its fortification, expert opinion established it was a fortified "rock house" maintained for the purpose of manufacturing and selling rock cocaine.

After being shown the search warrant, appellant asked to speak to an officer away from the other occupants. After advice and waiver of his rights, appellant said he was the sole resident of the house, having moved in two or three months earlier, and that all the paraphernalia there belonged to him. When asked if he had any cocaine at the residence, appellant indicated his pants pocket, from which an officer removed a plastic baggie containing .64 grams of rock cocaine. In the expert opinion of an officer, this cocaine was possessed for sale based upon all the circumstances.

Upon later being readvised of his rights at the police station, appellant began to laugh. He said he had earlier seen the SWAT team members "sketching" his residence and he had moved drugs out of the residence because he knew the officers were coming.

At trial appellant testified in his own defense, admitting that he was a cocaine addict. He denied the house was his residence, claiming it was abandoned and that he used it for "partying," that is, using and sharing cocaine with a group of people. Although denying that he had any cocaine in his pocket when arrested, he testified that he could personally use .64 grams of cocaine within 10 minutes, and that such an amount would last only 30 seconds if shared with a group of people.

## DISCUSSION

Appellant contends the trial court committed instructional and sentencing errors. Finding no reversible error, we affirm.

### INSTRUCTION ON ATTEMPTING TO CONCEAL EVIDENCE

Based on CALJIC No. 2.06, the trial court instructed the jury "if you find that a defendant attempted to suppress evidence against himself in any manner, such as by concealing evidence, such attempts may be considered by you as a circumstance tending to show a consciousness of guilt. However, such evidence is not sufficient in itself to prove guilt; and its weight and significance, if any, are matters for your consideration."

■ Appellant contends this instruction was improper, as unsupported by any evidence, on the ground that "the prosecution failed to present any evidence . . . which would tend to prove that the defendant attempted to conceal the .64 grams of cocaine that was allegedly found in his pants pocket."

Contrary to this argument, however, the instruction was not limited to the count charging appellant with possession of the .64 grams of cocaine found in his pocket. Other evidence showed that appellant bragged to the police officers that he knew they were coming and he therefore had removed drugs from the house before they arrived. Appellant thus admitted that he had attempted to conceal and remove evidence from the officers' discovery, amply justifying the instruction. Appellant offers no legal authority for his theory that this instruction must be limited to evidence unsuccessfully concealed by a defendant and actually introduced into evidence at trial.

### REASONS FOR SENTENCE CHOICE

■ Appellant correctly contends that the trial court was required to state on the record its reasons for selecting the upper term and that the court could not simply incorporate the probation officer's report by reference. (*People* v. *Turner* (1978) 87 Cal.App.3d 244, 247 [150 Cal.Rptr.

807].)[1] However, it not necessary to reverse, as there is no reasonable probability that a result more favorable to appellant would occur if the matter were remanded for a more explicit statement of reasons by the trial court. (*People* v. *Porter* (1987) 194 Cal.App.3d 34, 39 [239 Cal.Rptr. 269].) The probation report recommended the high base term, commenting, "This 43-year-old defendant before the court admits his guilt in the possession of cocaine and using cocaine for several years while denying that he had anything to do with the manufacture or sale of cocaine or of maintaining a place where it was manufactured or sold. Available information appears to contradict this and indicates defendant was quite involved in both." The probation report further found, "The circumstances in aggravation are: [¶] 1. The defendant appeared to occupy a position of leadership of other participants in the commission of the crime. [¶] 2. The planning and professionalism with which the crime was carried out indicated premeditation. [¶] 3. He has engaged in the pattern of violent conduct which indicates a serious danger to society. [¶] 4. The defendant's prior convictions are numerous and of increasing seriousness. [¶] The circumstances in mitigation are: [¶] 1. The defendant's prior performance on probation was good. [¶] Circumstances in aggravation appear to outweigh those in mitigation to the point of recommending the high-base term of a state prison commitment." In view of the record, it would be idle to remand for a statement of reasons.

## Penal Code Section 654

■ As interpreted by the courts, Penal Code section 654 precludes multiple punishment where several crimes are committed during an indivisible course of conduct with a single criminal objective. On the other hand, multiple punishment is permissible if the defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].) ■ Appellant contends that in light of his sentence on count III (Health & Saf. Code, § 11366.6), the trial court should have stayed the execution of the concurrent sentences on counts I (Health & Saf. Code, § 11350) and II (Health & Saf. Code, § 11366).[2]

We reject appellant's contentions. ■ Whether a course of criminal conduct violating more than one penal statute is committed with a single criminal intent or with multiple criminal objectives is ordinarily a question of fact for the trial court, whose implied finding of multiple criminal intent

---

[1] The trial court stated, "There are aggravating factors listed at page 12 of the probation report which I specifically find to be true as to each count, thus justifying the high term as to each count."

[2] In his brief appellant argued he could not be punished on both count III and count II. At oral argument he additionally contended he could not be punished on both count II and I.

will be upheld if supported by substantial evidence. (*People* v. *Goodall* (1982) 131 Cal.App.3d 129, 148 [182 Cal.Rptr. 243]; *People* v. *Porter, supra,* 194 Cal.App.3d at p. 38.) For example, in *People* v. *Goodall, supra,* the court upheld multiple punishment on three counts, possession of chemicals with intent to manufacture PCP, manufacture of PCP, and possession for sale of PCP, because the evidence supported an implied finding of multiple criminal objectives to manufacture PCP, to sell the PCP the defendants had manufactured, and to manufacture more PCP with the ingredients not used up in the first step. (*People* v. *Goodall, supra,* at p. 147.)

 In this case the record amply supports punishment on all three counts. The evidence seized by the police, appellant's statements to police, and appellant's testimony at trial support the trial court's implied finding of multiple criminal objectives.

The .64 grams of cocaine in appellant's pants pocket (count I) was for his own personal use as supported by his testimony that he could use that amount himself in 10 minutes, and by the fact that the jury found him guilty of simple possession as a lesser included offense of possession for sale.

In addition, appellant maintained this residence for using and sharing cocaine with other people, supported by his own testimony and the presence of other suspects and the physical evidence found at the scene. This violated Health and Safety Code section 11366 as found in count II.[3] (See, e.g., *People* v. *Colvin* (1971) 19 Cal.App.3d 14, 18 [96 Cal.Rptr. 397]; *People* v. *Horn* (1960) 187 Cal.App.2d 68, 70-74 [9 Cal.Rptr. 578].) Corrupting and encouraging others by maintaining a place for drug abusers to gather and by furnishing drugs to them is a separate criminal objective independent of appellant's personal use.

 Health and Safety Code section 11366 does not require that the place be maintained for the purpose of selling; it can be violated without selling, merely by providing a place for drug abusers to gather and share their experience. Health and Safety Code section 11366.6 (count III), on the other hand, requires that the place be fortified to prevent law enforcement entry and that it be used to "sell, manufacture, or possess for sale" designated drugs.[4] (See *Langford* v. *Superior Court* (1987) 43 Cal.3d 21, 40-42 [233

---

[3] Health and Safety Code section 11366 provides: "Every person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using [designated controlled substances] shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison."

[4] Health and Safety Code section 11366.6 provides: "Any person who utilizes a building, room, space, or enclosure specifically designed to suppress law enforcement entry in order to sell, manufacture, or possess for sale any amount of [designated controlled substances] shall be punished by imprisonment in the state prison for three, four, or five years."

Cal.Rptr. 387, 729 P.2d 822].) Expert opinion in this case established that appellant maintained this residence not only for partying with his friends but also for manufacturing cocaine for sale from a fortified house designed to prevent law enforcement entry.[5] The expert testified that the paraphernalia for manufacturing, cutting, weighing and packaging exceeded that which would be associated with mere use, and together with the extensive fortification of the residence indicated it was maintained for the purpose of selling and manufacturing rock cocaine. Appellant thus had an additional criminal objective which was independent of and not merely incidental to his objectives in violating counts I and II. The trial court was not required by Penal Code section 654 to stay the execution of sentence on counts I and II.

The judgment is affirmed.

Boren, J., and Hastings, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 20, 1988.

---

[5] The trial court was not required to accept a statement by the prosecutor conceding that Penal Code section 654 applied to these two counts.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.